IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RICARDO SANCHEZ,
        Plaintiff,

vs.                                                     Case No.: 5:10cv288/RH/EMT

JOSE L. SANCHEZ, JR., et al.,
        Defendants.

## ORDER, REPORT AND RECOMMENDATION

Plaintiff Ricardo Sanchez ("Plaintiff") is a federal inmate who proceeds pro se and in forma pauperis. This cause is now before the court upon the motion to dismiss filed by Defendant Jose L. Sanchez, Jr. ("Defendant Sanchez") (doc. 77). Plaintiff has responded (docs. 79, 87), and Defendant Sanchez has replied (doc. 89). The case has been referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). For the reasons set forth below, the court recommends that the motion to dismiss be **DENIED**.

**BACKGROUND**

Plaintiff initiated this action in September 2010 in the Eastern District of North Carolina, which district transferred the case to the Northern District of Florida in November 2010 (*see* docs. 1, 4, 5). After Plaintiff amended his complaint several times (*see* docs. 21, 26, 44), this court recommended dismissal of the third amended complaint for the failure to state a claim for relief (doc. 49). The district court rejected in part this court's recommendation (*see* doc. 50). While agreeing that Plaintiff's allegations did not state a cause of action under the Federal Tort Claims Act, the district court held that the second amended complaint adequately stated an Eighth Amendment claim on which relief could be granted under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,

403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)[1] (*id.*). The district court therefore struck the third amended complaint, reinstated the second amended complaint, and remanded the case to the undersigned for further proceedings (*see id.*). Subsequently, this court directed service of the second amended complaint on the single individual of the three named Defendants whom Plaintiff had sufficiently identified for service purposes, John Doe Sanchez, UNICOR[2][ ] Federal Prison Industries ["FPI"], Associate Warden (*see* docs. 51, 54, 55), who has since been identified as Jose L. Sanchez, Jr. (*see* docs. 62, 72). The court advised Plaintiff that service on the other two Defendants, John Doe, UNICOR[ ] FPI Section 3 Factory Manager, and John Doe, UNICOR[ ] FPI Contract Procurement Coordinator (doc. 26 at 1–2),[3] would be directed later if they were identified through discovery (doc. 55).

Plaintiff's second amended complaint contains the following allegations. Plaintiff was incarcerated from 2004 until 2006 at the Federal Correctional Institution, Marianna, Florida ("FCIM") (doc. 26 at 4). From March 7, 2005, through February 27, 2006, he worked in the UNICOR computer recycling program, where he unpacked computer monitors that arrived loaded on pallets; he also disassembled the monitors into their component parts (*id.* at 11). According to Plaintiff, sometimes the monitors broke while being handled, which resulted in the release of toxic fumes and gases to which he was exposed (*id.*). Plaintiff contends he was refused any safety equipment, including goggles, respirators, or protective clothing (*id.*). While working in the computer recycling program, Plaintiff started developing problems with his breathing, skin, and eyes, as well as constant lower-back pain. According to Plaintiff, in June 2008 he was diagnosed with a cancerous tumor on the right kidney, and in June 2009 the kidney and part of his pelvis where the cancer had spread were removed

---

[1] Bivens recognizes a private right of action for money damages against federal actors that engaged in alleged violations of the Constitution or laws of the United States. Bivens, 403 U.S. at 397.

[2] UNICOR is a wholly owned, Government corporation, and its mission is in part to provide job skills training to inmates confined within the Federal Bureau of Prisons ("BOP"). *See* http://www.bop.gov/inmate programs/unicor.jsp (last visited July 31, 2014).

[3] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Case No.: 5:10cv288/RH/EMT

(*id.* at 9, 11–13).[4]  Plaintiff maintains that his current medical condition developed as a result of exposure to the toxins in his UNICOR work environment.  Plaintiff asserts that Defendant John Doe Factory Manager directed his work and told Plaintiff there were no safety goggles or respirators available when Plaintiff complained that the fumes made his eyes water, made him cough, and caused difficult breathing (*id.* at 14).  Plaintiff also asserts that Defendant Sanchez and Defendant John Doe Contract Procurement Coordinator were frequently on site monitoring the progress of the program (*id.*).  According to Plaintiff, "even the Community recyclers knew that these computer monitors contained toxic components and started shipping the computer monitors to China for breakdown there" (*id.* at 15), seemingly suggesting that Defendants Sanchez and John Doe Contract Procurement Coordinator must have known about the dangers of the recycling program.  In his statement of claims, Plaintiff asserts violations of the right to be free from cruel and unusual punishment and the right to equal protection.[5]  He seeks $20,000,000.00 in damages as relief.

Defendant Sanchez moves for dismissal on several grounds.[6]  He first argues that Plaintiff did not exhaust any administrative remedies prior to filing suit (doc. 77 at 6–7).  Additionally, Defendant Sanchez contends that Plaintiff's allegations in the second amended complaint fail to state a cause of action against him under the Eighth Amendment because the allegations are insufficient to show that Defendant Sanchez "is liable for the misconduct alleged" (*id.* at 9).  Furthermore, even if Plaintiff

---

[4]  Plaintiff indicates that he filed a separate federal lawsuit in Missouri in which he raised claims related to the diagnosis and treatment of his renal cancer (*see* doc. 26 at 9).  The court takes judicial notice of the order granting the Defendants' motion for summary judgment in Sanchez v. Lappin, Case No. 10-3438-CV-S-ODS-P (W.D. Mo. May 21, 2012) (rejecting Plaintiff's Eighth and Fourteenth Amendment Bivens claims concerning medical treatment for a kidney tumor).

[5]  Plaintiff also asserts a claim for the violation of his right to due process under the Fifth Amendment (doc. 26 at 16).  The court notes that Plaintiff's allegations concerning his conditions of confinement do not implicate procedural due process, and it concludes it should not address these allegations under a substantive due process analysis.  It is well established that if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.  County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (citations omitted).  The Eighth Amendment's prohibition against cruel and unusual punishment governs Plaintiff's claim that he was subjected to unsafe working conditions while he was confined in the custody of the BOP at FCIM.  *See* Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  The court therefore does not address Plaintiff's due process claim separately.

[6]  Defendant Sanchez states that he reads the district court's order as remanding only Plaintiff's Eighth Amendment claim (doc. 77 at 1 n.1).  Accordingly, in his motion Defendant Sanchez addresses only this claim.

exhausted his administrative remedies and stated a cause of action upon which relief could be granted, the second amended complaint is still subject to dismissal because Defendant Sanchez is entitled to qualified immunity. "Thus, a quick dismissal of this suit as to Defendant Jose L. Sanchez, Jr. would serve the purposes of justice and judicial economy, and comply with the reasons for qualified immunity." (doc. 77 at 3). Defendant Sanchez also contends that, at most, Plaintiff's allegations implicate negligence, which does not give rise to a constitutional claim and that as a supervisor he is not liable for a Bivens claim. According to Defendant Sanchez, "[f]or these reasons, dismissal of Plaintiff's complaint in its entirety, with prejudice, is appropriate" (*id.*).

Plaintiff filed a response to Defendant Sanchez's motion (doc. 79), in which he submits that he exhausted his administrative remedies concerning the events at FCIM after he was transferred to a BOP facility in Butner, North Carolina. In support, he references his initial complaint and attached exhibits (doc. 1), and he points to documents attached to his response (doc. 79 at 4–13). Because Plaintiff failed to address all of Defendant Sanchez's arguments for dismissal, the court directed Plaintiff to file an amended response that did so, and it directed Defendant to file a reply to the response once it was filed (doc. 80). Plaintiff's second response is titled "Motion to Dismiss Defendant's Claim of Qualified Immunity" (doc. 87) (emphasis in original), which only opposes the defense of qualified immunity.[7] Defendant Sanchez filed a "Response to Plaintiff's Motion to Dismiss Defendant's Claim of Qualified Immunity," treated by the court as a reply, in which Defendant Sanchez states that he relies on all of the facts and arguments presented in the motion to dismiss, reiterates the assertion of entitlement to qualified immunity, and again requests that Plaintiff's second amended complaint be dismissed with prejudice (doc. 89). The reply does not address Plaintiff's arguments and documents, as presented in his initial response, that he in fact exhausted his administrative remedies prior to filing suit.

---

[7] Despite Plaintiff's failure to comply with the court's instructions to respond fully to Defendant Sanchez's motion in a single response, in light of his pro se status, the court considers both of Plaintiff's responses to the motion to dismiss (docs. 79, 87).

Case No.: 5:10cv288/RH/EMT

**DISCUSSION**

<u>Statute of Limitations</u>

Defendant Sanchez does not assert a statute of limitations defense. The court notes the following, however. <u>Bivens</u> suits have the same statute of limitations as suits brought under 42 U.S.C. § 1983. <u>Kelly v. Serna</u>, 87 F.3d 1235, 1238 (11th Cir. 1996). In cases in which Florida is the forum state, as here, a § 1983 or <u>Bivens</u> plaintiff has four years to file suit. *See* <u>Chappell v. Rich</u>, 340 F.3d 1279, 1283 (11th Cir. 2003). "[U]nder our <u>Bivens</u> case law, an action accrued at the time the plaintiff knew or had reason to know of his claims." <u>Uboh v. Reno</u>, 141 F.3d 1000, 1002 (11th Cir. 1998). Accordingly, this action accrued at the time Plaintiff knew or had reason to know of his claims, and he had four years from that date in which to commence suit.

Plaintiff asserts that he was exposed to toxic materials while working in the recycling program at FCIM from March 7, 2005, through February 27, 2006, subjecting him to cruel and unusual punishment and the denial of equal protection (doc. 26 at 13–14). More specifically, Plaintiff contends that he experienced respiratory, skin, and back pain problems for "several months during his final year" at FCIM (*id.* at 12), and was denied equal protection in that he was not provided the same safe working conditions that would have been provided "citizens of the community [used] as a labor force" (*id.* at 14). To the extent Plaintiff asserts civil rights violations with respect to circumstances that existed and symptoms that he experienced <u>while he was housed at FCIM and worked in the recycling program from March 2005–February 2006</u>, the court concludes that those circumstances and symptoms were sufficient to give him reason to know of any cruel and unusual punishment or equal protection claims. Thus an action for such claims accrued no later than February 27, 2006, making the claims untimely filed—and thus time-barred—when Plaintiff initiated this case more than four years later on September 21, 2010 (*see* doc. 1 at 6).[8] Plaintiff also asserts that on June 27, 2008, he was diagnosed with renal cancer which resulted from his exposure to toxic materials at FCIM between

---

[8] Additionally, even if Plaintiff's equal protection claim were not time-barred, no claim would lie. Plaintiff asserts that he was not treated the same as private sector workers who worked in the computer recycling industry. This claim is based on the treatment of individuals outside the prison system who are not within Defendants' control. Thus Plaintiff has not demonstrated: (1) that "he is similarly situated with other prisoners who received" more favorable treatment; and (2) that his discriminatory treatment was based on some constitutionally protected interest such as race. <u>Sweet v. Secretary, Dept. of Corrections</u>, 467 F.3d 1311 (11th Cir. 2006) (citing <u>Jones v. Ray</u>, 279 F.3d 944, 946–47 (11th Cir. 2001)).

March 2005 and February 2006. The court concludes that June 27, 2008, the date of his cancer diagnosis, is the date Plaintiff knew or should have known of any claim of cruel and unusual punishment related to this diagnosis.[9] This Eighth Amendment claim therefore was timely filed.

### Failure to Exhaust Administrative Remedies

The court first considers Defendant Sanchez's contention that Plaintiff's claims should be dismissed because he failed to exhaust administrative remedies prior to filing this action, as required by 42 U.S.C. § 1997e(a). According to Defendant Sanchez, "a review of the BOP's administrative remedy records reveals that Plaintiff has not filed *any* administrative remedies regarding any of the issues raised against the Bivens defendants in the present case" (doc. 77 at 7) (emphasis added). Thus, Defendant Sanchez asserts, "the court lacks subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies" (*id.*).

Title 42 U.S.C. § 1997e(a) provides for mandatory exhaustion of prison condition claims brought by inmates, whether the claims are filed pursuant to § 1983 or, as in this case, as a Bivens action. Alexander v. Hawk, 159 F.3d 1321, 1324–26 (11th Cir. 1998). A failure-to-exhaust defense is non-jurisdictional[10]; nevertheless, it is "like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a 'matter[ ] in abatement, and ordinarily [does] not deal with the merits.'" Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 at 78 n.15 (3d ed. 2004)); *see also* Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) ("[W]e have held that the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement. . . ."); Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (observing that the defense of failure to properly exhaust available administrative remedies under the PLRA is treated procedurally like a defense for lack of jurisdiction although it is not a jurisdictional matter). An exhaustion issue ordinarily should be considered in a motion to dismiss and is not the proper subject for a summary

---

[9] In his claim for damages under the Federal Tort Claims Act, a copy of which is attached to the second amended complaint, Plaintiff states that he learned of his cancer diagnosis on June 2**4**, 2008 (doc. 26 at 4). Whether the date was June 24 or June 27 is not material here.

[10] The Supreme Court has confirmed that exhaustion under the PLRA is not a jurisdictional prerequisite. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2392, 165 L. Ed. 2d 368 (2006) (stating that it is "clear that the PLRA exhaustion requirement is not jurisdictional").

judgment motion. Bryant, 530 F.3d at 1374–75; *see also* Solliday v. Federal Officers, 413 F. App'x 206, 208 n.3 (11th Cir. 2011) (citing Bryant, 530 F.3d at 1374–75). Factual disputes concerning the exhaustion of administrative remedies may be decided by the court sitting as fact-finder, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.* at 1373–74, 1376. Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. Turner, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response, if any. *Id.* If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also* Bryant, 530 F.3d at 1373–74. If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082.

Based on the foregoing discussion, the court concludes that Defendant Sanchez errs in arguing that this action is due to be dismissed, presumably pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction on the ground Plaintiff failed to exhaust his administrative remedies. Nevertheless, Defendant Sanchez's having raised the issue of failure to exhaust as set forth in 42 U.S.C. § 1997e and presented evidence in support of dismissal based on this theory—and Plaintiff's having had an opportunity to respond and submit evidence in opposition—the court shall consider this aspect of Defendant Sanchez's motion as having been brought pursuant to Rule 12(b)(6). *See* Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995) (treating improper dismissal under Rule 12(b)(1) as dismissal under Rule 12(b)(6)).

Title 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," and mandates strict exhaustion, "irrespective of the forms of relief sought and offered through administrative avenues." Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (internal quotation marks and citations omitted); *see also* Alexander, 159 F.3d at 1325–28 (holding

that prisoner asserting Bivens claim must exhaust available administrative remedies, even when those remedies are futile or inadequate). Furthermore, exhaustion of administrative remedies means proper exhaustion of such remedies, that is, under the terms of and according to the time set by BOP regulations. *See* Woodford, 548 U.S. at 93–94.

The BOP provides a four-level administrative grievance procedure for prisoner complaints. *See* 28 C.F.R. § 542.10–542.15; United States Dep't of Justice, Federal Bureau of Prisons, Program Statement No. P1330.17.  A prisoner must initially seek resolution of his complaint by filing an informal grievance.  *See* 28 C.F.R. § 542.13(a); BOP Program Statement P1330.17 at 4–5.  If unsuccessful, the inmate then may submit a formal written request to the warden within twenty calendar days of the date on which the basis for the request occurred.  28 C.F.R. § 542.14(a); BOP Program Statement P1330.17 at 4–6. An inmate who is not satisfied with the warden's response may appeal to the Regional Director.  *See* 28 C.F.R. § 542.15; BOP Program Statement P1330.17 at 6–7. The appeal must be submitted within twenty calendar days of the date the warden signed the response. *See id.*  An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel for the BOP within thirty calendar days of the date the Regional Director signed the response.  *See* 28 C.F.R. § 542.15; BOP Program Statement P1330.17 at 6–7.  When the inmate demonstrates a valid reason for delay, these time limits may be extended.  28 C.F.R. § 542.15; BOP Program Statement P1330.17 at 7.  In general, a valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame.  28 C.F.R. § 542.14(b).  Valid reasons for delay include the following: an extended period in transit, during which the inmate was separated from documents needed to prepare the request or appeal; an extended period of time during which the inmate was physically incapable of preparing a request or appeal; an unusually long period taken for informal resolution attempts; and indication by an inmate, verified by staff, that a response to the inmate's request for copies of requested dispositions was delayed. *Id.*

In support of his contention that Plaintiff failed to exhaust his administrative remedies prior to filing suit, Defendant Sanchez relies on the declaration of Racheal Jamison, who identifies herself as an FCIM administrative remedy clerk (doc. 77-1).  Ms. Jamison states that she has the ability to search BOP records and "determine whether an inmate filed an administrative remedy request under the Administrative Remedy Program while incarcerated at FCI Marianna" (*id.* at 1) (emphasis added).

According to Ms. Jamison, her search "revealed no record of [Plaintiff] filing an administrative remedy request under the Administrative Remedy Program while incarcerated at FCI Marianna that pertained to his work at the UNICOR computer recycling factory" (*id.* at 2).

The records Plaintiff submitted with his initial complaint and initial response to the motion for summary judgment are consistent with Ms. Jamison's assertion that he did not file any administrative remedy requests while he was incarcerated at FCIM.  Rather, Plaintiff's records reflect that he filed requests for administrative remedies, and received responses to those requests, while he was housed at Butner Medical Center (*see* doc. 79 at 5–12).  Thus Defendant Sanchez's argument in his motion for dismissal on the ground "Plaintiff has not filed *any* administrative remedies regarding any of the issues raised against the Bivens defendants in the present case" (doc. 77 at 7) (emphasis added) is without foundation.  Unfortunately, as noted above, in replying to Plaintiff's responses to the motion to dismiss, Defendant Sanchez did not address Plaintiff's contention and evidence that he in fact exhausted his administrative remedies prior to filing suit while at Butner Medical Center.

Plaintiff filed his informal grievance complaining of exposure to hazardous materials at FCIM, in violation of the Eighth Amendment, on August 26, 2009, and received a response on September 18, 2009, indicating that the issue could not be resolved informally (*see* doc. 79 at 5–6).  Next, Plaintiff submitted a formal written request to the [Complex] Warden on September 23, 2009, who responded on September 30, 2009, by referring Plaintiff to BOP Program Statement, P1600.09, Occupational Safety, Environmental Compliance and Fire Protection, Chapter 1 Page 8, Section 5, Inmate Accident Compensation, for information regarding inmate compensation for injury (*id.* at 7–8).  Plaintiff's formal written request appears to have been neither denied nor granted; rather, the response states "your Request for Administrative Remedy is for informational purposes" (*id.*).  Plaintiff then appealed to the Regional Director on October 7, 2009 (*id.* at 9–10).  The court could not locate a response by the Regional Director to this appeal, but presumably Plaintiff was not satisfied with the response because on December 11, 2009, he filed an appeal with the Central Office (*id.* at 11).  The response to Plaintiff's appeal from the Administrator of National Inmate Appeals, dated May 3, 2010, cites BOP Program Statement 1330.13, which states "'an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures'" (*id.* at 12).  The response goes on to advise Plaintiff

that the exclusive mechanism for providing compensation for work-related injury is the Inmate Accident Compensation procedure set forth at 18 U.S.C. § 301 (*id.*). The response to Plaintiff's appeal seems to have been neither denied nor granted, noting simply that it was "for informational purposes only" (*id.*).

With respect to an Eighth Amendment claim founded on his cancer diagnosis, Plaintiff appears to have pursued the administrative remedies process in the sequence set forth by 28 C.F.R. §§ 542.10–542.15. Additionally, as minimally required, it appears that Plaintiff "alert[ed] prison officials to the problem and [gave] them the opportunity to resolve it before being sued." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1219 (11th Cir. 2010) (citing Jones v. Bock, 549 U.S. 199, 219, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)). The timing of the filing of Plaintiff's grievances, however, seems problematic. Plaintiff apparently did not initiate the informal grievance procedure until August 26, 2009, or file a request for administrative remedy with the Complex Warden until September 23, 2009, which dates were well over one year after he was diagnosed with renal cancer in June 2008 and several months after the cancerous kidney was removed in June 2009. As noted, a formal written request to the warden must be filed within twenty calendar days of the date on which the basis for the request occurred, 28 C.F.R. § 542.14(a), unless an extension is granted for a valid reason for the delay. 28 C.F.R. § 542.15. It appears that the administrative remedies procedure was not timely initiated in this case and that no extensions were granted. The court notes, however, that the requests/appeal were not rejected for being untimely; indeed, the responses do not appear to deny the requests at all but rather they state that they were being provided "for informational purposes" only. Defendant Sanchez does not argue that the complaint is subject to dismissal for the failure to exhaust administrative remedies in accordance with the time requirements set out in the applicable BOP regulations. Nor have the parties developed the record with respect to the timeliness of Plaintiff's efforts to exhaust all administrative remedies that were available to him prior to filing suit. Defendant Sanchez "bear[s] the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082–83. As the court is unable to conclude at this time that Defendant Sanchez has satisfactorily met this burden, it does not recommend dismissal for the failure to timely exhaust administrative remedies. Rather, the court believes this matter should be left for later consideration, if properly raised, upon an adequately developed record.

Failure to State a Claim for Relief

Defendant Sanchez also argues that Plaintiff's claims against him fail to state a claim for relief. According to Defendant Sanchez, Plaintiff has failed to "plead factual allegations that create a reasonable inference that Defendant Sanchez is liable for the misconduct alleged" (doc. 77 at 9). Based on Plaintiff's allegations, Defendant Sanchez submits, Plaintiff never spoke with Defendant Sanchez, and Defendant Sanchez only visited the computer recycling work area to monitor the program due to the BOP's excitement about it (*id.*).[11]

The district court has already spoken on the issue of whether Plaintiff has stated an Eighth Amendment claim for relief against FCIM prison officials for intentionally exposing him to carcinogens, and it concluded that he has. In so finding, the district court stated

> The plaintiff Ricardo Sanchez alleges that while he was an inmate at the Federal Correctional Institution in Marianna, Florida, prison officials required him to work in the computer-recycling program, that this exposed Mr. Sanchez to carcinogens, that prison officials knew this and proceeded anyway, and that as a result Mr. Sanchez developed renal cancer.

(doc. 50 at 1).

Continuing, the district court stated

> The complaints include abundant detail about the hazardous nature of the materials to which Mr. Sanchez was exposed and how he was exposed to them. And the complaints adequately allege that officials knew of the hazard and proceeded anyway. Thus, for example, the very first complaint alleged that prison officials "knew of the significant hazardous work environment," "took no precautionary measure," and "knowingly and affirmatively creat[ed] a dangerous environment" that "they knew to be dangerous." ECF No. 1, at 4. The complaint alleged that the officials acted with "deliberate indifference to Plaintiff's safety," *id.*, a conclusion that easily followed from the allegation that the officials deliberately exposed Mr. Sanchez to a known risk. Later versions of the complaint did not use the same language but  w e r e  f u l l y consistent; Mr. Sanchez has said from the outset that prison officials willfully exposed him to carcinogens.

---

[11] Defendant Sanchez acknowledges the more specific allegations that Plaintiff has made against Defendant John Doe Factory Manager, including that this Defendant had day-to-day contact with Plaintiff, directed his work, and failed to provide him with protective equipment despite knowing of Plaintiff's complaints that he suffered problems with watering eyes, coughing, and breathing.

> A well-trained pleader could have said it better, but for a Spanish-speaking inmate working with limited assistance from other inmates, this is good enough. This order reinstates the second amended complaint—the most recent version that best alleges an Eighth Amendment claim under Bivens.

(*id.* at 2–3).

Thus the district court has already ruled that Plaintiff has stated a claim for relief under the Eighth Amendment against FCIM prison officials who willfully exposed him to carcinogens. Plaintiff's specific, albeit spare and inartfully pleaded, allegation that Defendant Sanchez [and Defendant John Doe Contract Procurement Coordinator] were at the plant "frequently monitoring the progress of the computer breakdown" program (doc. 26 at 14) was considered by the district court when it reached this ruling. In light of the district court's findings, *supra*, and taking into account Plaintiff's other allegations, including his description of allegedly unconstitutional actions taken by Defendants "collective[ly]" (*id.*), this court believes Plaintiff's assertion is sufficient to place Defendant Sanchez among the prison officials against whom a claim has been stated.[12] This court therefore recommends that Defendant Sanchez's request to be dismissed from this action on the ground Plaintiff has failed to state a claim for relief against him be denied.

Qualified Immunity

Defendant Sanchez also claims his entitlement to qualified immunity. According to Defendant Sanchez, "Plaintiff was *not* required to work or to work in the recycling factory" (doc. 77 at 15) (emphasis in original). Moreover, Defendant Sanchez contends, Plaintiff has not alleged that "Defendant Sanchez was aware of any broken computers, Plaintiff's contact with them or any danger associated with them based on the safety equipment and clothing that was available to Plaintiff" (*id.*).

---

[12] Supporting that conclusion are statements in Plaintiff's second response describing Defendant Sanchez as an "Associate Warden overseeing the daily operations in the computer recycling program" who knew of the complaints of BOP inmates and staff working in the recycling program concerning the risk of exposure to toxic materials and their requests for protective equipment yet who failed to take any action (*see* doc. 87 at 5–8).

The court's conclusion that an Eighth Amendment claim for relief against Defendant Sanchez has been stated also disposes of the argument that the conduct alleged by Plaintiff amounts to no more than negligence. Additionally, as to Defendant Sanchez's argument that he is not subject to supervisory liability in this Bivens actions (*see* doc. 77 at 18–21), the court notes that, as a general proposition and to the extent Plaintiff alleges supervisory liability by Defendant Sanchez in this case, this is correct. *See* Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003). In large part, however, Plaintiff's allegations appear to implicate Defendant Sanchez's personal involvement in the violation of his Eighth Amendment rights.

"The question is not whether Plaintiff was exposed to hazardous toxins[;] it is whether Defendant Sanchez compelled him to be exposed while knowing of the risk and being deliberately indifferent to it. Plaintiff does not make these allegations nor does his Second Amended Complaint allege facts that tend to make this scenario plausible[;] rather, the facts he does allege make it implausible." (*id.*).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). The Supreme Court has explained that "the driving force" behind the qualified immunity doctrine is to ensure that "'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible." Anderson v. Creighton, 483 U.S. 635, 640 n. 2, 107 S. Ct. 3034, 3039 n.2, 97 L. Ed. 2d 523 (1987). Because this defense should be applied at the earliest possible stage of litigation, it is proper for a district court to rule on a claim of qualified immunity asserted in a motion to dismiss, Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003), although the defense is more "typically addressed at the summary judgment stage of a case." St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002). To survive a motion to dismiss on qualified immunity grounds, a plaintiff must satisfy the two-pronged qualified-immunity standard: (1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were "clearly established" when the defendant committed the complained-of act. Pearson, 555 U.S. at 232. A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other. *Id.* at 236.[13]

The court has already concluded that the facts alleged by Plaintiff are sufficient to constitute a violation of his constitutional rights; that Plaintiff may have volunteered to work in the recycling program, for a reason such as the opportunity to earn better pay, and was not "compelled" by

---

[13] To receive qualified immunity, a public official must first demonstrate that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). A government official acts within his discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Here, there can be no dispute that Defendant Sanchez was acting within his discretionary authority. Therefore, the burden shifts to Plaintiff to show that qualified immunity is not warranted. Vinyard, 311 F.3d at 1346.

Defendant Sanchez to do so, does not alter this conclusion.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Loftus v. Clark–Moore, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks omitted).  Clearly established law holds that a prison official's deliberately exposing an inmate to toxic substances can violate the Eighth Amendment.  *See* Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).  This is what Plaintiff's allegations against the FCIM prison officials, including Defendant Sanchez, in essence assert.  Therefore, at this pleading stage of the proceedings, at which the court has the benefit of absolutely no evidence on the matter—such as Defendant Sanchez's affidavit, others' affidavits, or any other evidence regarding the specific information known during the period in question about potential hazards of the computer recycling program at FCIM—the court concludes that Defendant Sanchez has not shown that he should be granted qualified immunity at this time.

**CONCLUSION**

For the reasons stated above, the court concludes that Defendant Sanchez's motion to dismiss on the grounds that Plaintiff failed to exhaust administrative remedies, that Plaintiff's allegations fail to state a claim for relief against Defendant Sanchez, and that Defendant Sanchez is entitled to qualified immunity should be denied.  Plaintiff's claim under the Eighth Amendment that prison officials willfully exposed him to carcinogenic materials, which resulted in his June 2008 diagnosis of renal cancer, should be permitted to proceed.

Plaintiff is reminded, however, of the district court's caution when reinstating the second amended complaint:

> The conclusion that the second amended complaint adequately states a claim on which relief can be granted does not mean that Mr. Sanchez will be able to recover.  Alleging that officials knew of a risk and deliberately proceeded anyway is far easier than proving that there was in fact a risk, that officials knew it, and that they deliberately proceeded anyway.  And alleging that a cancer was caused by exposure to these chemicals is far different from proving it.  Mr. Sanchez will face a difficult burden to establish that officials were deliberately indifferent or that exposure to these chemicals caused this cancer.  But this does not warrant dismissal.  As the Supreme Court said in disapproving the dismissal of a different case, "federal courts and litigants must rely on summary judgment and control of discovery to weed out

unmeritorious claims sooner rather than later." Leatherman v. Tarrant County Narcotics and Intelligence and Coordination Unit, 507 U.S. 163, 168–69 (1993).

(doc. 50 at 3–4).

In light of the age of this case, and the fact that two of the Defendants have not yet been identified by name or served, the undersigned concludes that the BOP should now be required to file a notice identifying the names and official addresses of John Doe, UNICOR FPI Section 3 Factory Manager, and John Doe, UNICOR FPI Contract Procurement Coordinator, as set forth in the second amended complaint. If the district court adopts this Report, with this information the instant matter will be better positioned to proceed more expeditiously through discovery and to resolution. Should the BOP be able to provide the names and official addresses of John Doe, UNICOR FPI Section 3 Factory Manager, and John Doe, UNICOR FPI Contract Procurement Coordinator, defense counsel is requested to enter an appearance on these parties' behalf or advise the court of the reasons for her inability to do so.

Accordingly, it is **ORDERED:**

1. That no later than **AUGUST 15, 2014,** the Bureau of Prisons shall file a notice setting out the names and official addresses, if known to or ascertainable by the Bureau of Prisons, of John Doe, UNICOR FPI Section 3 Factory Manager, and John Doe, UNICOR FPI Contract Procurement Coordinator. If the names and official addresses of these parties are not known and cannot be ascertained, the Bureau of Prisons shall so advise the court within the time allotted.

2. That no later than **AUGUST 22, 2014**, if the Bureau of Prisons provides the names and official addresses of John Doe, UNICOR FPI Section 3 Factory Manager, and John Doe, UNICOR FPI Contract Procurement Coordinator, defense counsel should enter an appearance on these parties' behalf or advise the court of the reasons for her inability to do so.

And it respectfully **RECOMMENDED:**

That the motion to dismiss filed by Defendant Jose L. Sanchez, Jr. (doc. 77) be **DENIED**. Plaintiff's claim under the Eighth Amendment that prison officials willfully exposed him to carcinogenic materials, which resulted in his June 2008 diagnosis of renal cancer, should be permitted to proceed.

At Pensacola, Florida this 31st day of July 2014.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**