IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RICARDO SANCHEZ,
            Plaintiff,

vs.                                  Case No.: 5:10cv288/RH/EMT

JOSE L. SANCHEZ, JR., et al.,
            Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

      This case filed by Plaintiff Ricardo Sanchez ("Plaintiff"), a federal inmate who proceeds pro se and in forma pauperis, was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C), and Fed. R. Civ. P. 72(b). Now before this court is the motion for summary judgment filed by Defendant Jose L. Sanchez, Jr. ("Defendant Sanchez") (doc. 99), to which Plaintiff has not responded, though he was directed to do so and was advised of the importance and ramifications of Rule 56 summary judgment consideration (*see* doc. 102; *see also* footnote 4, *infra*). For the reasons set forth below, the court recommends that Defendant Sanchez' motion be **GRANTED** and that Plaintiff's claims against this Defendant be dismissed with prejudice.

**BACKGROUND**

      Plaintiff initiated this action in September 2010 in the Eastern District of North Carolina, which district transferred the case to the Northern District of Florida in November 2010 (*see* docs. 1, 4, 5). After Plaintiff amended his complaint several times (*see* docs. 21, 26, 44), the undersigned recommended dismissal of the third amended complaint for the failure to state a claim for relief (doc. 49). The district court rejected in part this court's recommendation (*see* doc. 50). While

agreeing that Plaintiff's allegations did not state a cause of action under the Federal Tort Claims Act, the district court held that the second amended complaint adequately stated an Eighth Amendment claim on which relief could be granted under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The district court therefore struck the third amended complaint, reinstated the second amended complaint, and remanded the case to the undersigned for further proceedings (*see* doc. 50).

Upon remand, this court directed service of the second amended complaint on the single individual of the three named Defendants whom Plaintiff had sufficiently identified for service purposes, John Doe Sanchez, UNICOR[1][ ] Federal Prison Industries ["FPI"], Associate Warden (*see* docs. 51, 54, 55), who was later identified as Defendant Sanchez (*see* docs. 62, 72). The court advised Plaintiff that service on the other two Defendants, John Doe, UNICOR[ ] FPI Section 3 Factory Manager, and Joe Doe, UNICOR[ ] FPI Contract Procurement Coordinator (doc. 26 at 1–2), would be directed later if they were adequately identified (doc. 55). Subsequently, in response to the court's request, counsel for Defendant Sanchez informed the court that Defendant John Doe is Drew Short ("Defendant Short") (doc. 92), and service was ordered on this Defendant (doc. 94). Counsel entered an appearance on Defendant Short's behalf on December 19, 2014 (doc. 103), and has twice requested extensions of time for Defendant Short to file a response to the second amended complaint (*see* docs. 104, 107), most recently in a still-pending motion filed on February 5, 2015 (doc. 107). Defense counsel also informed that court that without more detailed information the Government was unable to provide the name and current contact information for Defendant Joe Doe (doc. 91). To date, Plaintiff has not identified Defendant Joe Doe, and thus he has not been served with process.

The second amended complaint contains the following allegations. Plaintiff was incarcerated from 2004 until 2006 at the Federal Correctional Institution, Marianna, Florida ("FCIM") (doc. 26 at 4). From March 7, 2005, through February 27, 2006, he worked in the UNICOR computer recycling program, where he unpacked computer monitors that arrived loaded on pallets; he also

---

[1] UNICOR is a wholly owned, Government corporation, and its mission is in part to provide job skills training to inmates confined within the Federal Bureau of Prisons ("BOP"). *See* http://www.bop.gov/inmate programs/unicor.jsp (last visited Feb. 10, 2015).

Case No.: 5:10cv288/RH/EMT

disassembled the monitors into their component parts (*id.* at 11). According to Plaintiff, sometimes the monitors broke while being handled, which resulted in the release of toxic fumes and gases to which he was exposed (*id.*). Plaintiff contends he was refused any safety equipment, including goggles, respirators, or protective clothing (*id.*). While working in the computer recycling program, Plaintiff started developing problems with his breathing, skin, and eyes, as well as constant lower-back pain. According to Plaintiff, in June 2008 he was diagnosed with a cancerous tumor on the right kidney, and in June 2009 the kidney and part of his pelvis where the cancer had spread were removed (*id.* at 9, 11–13).[2] Plaintiff maintains that his current medical condition developed as a result of exposure to the toxins in his UNICOR work environment. Plaintiff asserts that Defendant Short directed his work and told Plaintiff there were no safety goggles or respirators available when Plaintiff complained that the fumes made his eyes water, made him cough, and caused difficult breathing (*id.* at 14). Plaintiff also asserts that Defendants Sanchez and Joe Doe were frequently on site monitoring the progress of the program (*id.*). According to Plaintiff, "even the Community recyclers knew that these computer monitors contained toxic components and started shipping the computer monitors to China for breakdown there" (*id.* at 15), seemingly suggesting that Defendants Sanchez and Joe Doe must have known about the dangers of the recycling program. Alleging the violation of his rights under the Fifth, Eighth, and Fourteenth Amendments, Plaintiff seeks as relief $20,000,000.00 in damages.

Following service of the second amended complaint, Defendant Sanchez filed a motion to dismiss (doc. 77). The district court adopted the undersigned's Report and Recommendation that the motion to dismiss be denied (*see* doc. 90, report and recommendation, and doc. 96, order adopting report and recommendation).[3] Plaintiff's claim under the Eighth Amendment that prison

---

[2] Plaintiff filed a separate federal lawsuit in Missouri in which he raised claims related to the diagnosis and treatment of his renal cancer (*see* doc. 26 at 9). The court has taken judicial notice (doc. 90 at 3 n.4) of the order granting the Defendants' motion for summary judgment in Sanchez v. Lappin, Case No. 10-3438-CV-S-ODS-P (W.D. Mo. May 21, 2012) (rejecting Plaintiff's Eighth and Fourteenth Amendment Bivens claims concerning medical treatment for a kidney tumor).

[3] In his motion to dismiss, Defendant Sanchez did not address Plaintiff's Fifth and Fourteenth Amendment claims, explaining that he understood the district court to have reinstated the Eighth Amendment claim only. While the court agrees that understanding was correct, it nevertheless notes that Defendant Sanchez did not address all aspects of Plaintiff's Eighth Amendment claim. In any event, the Report and Recommendation, which the district court adopted,

officials willfully exposed him to carcinogenic materials, which resulted in his June 2008 diagnosis of renal cancer, was permitted to proceed. After a period of limited discovery (*see* doc. 95), Defendant Sanchez filed the instant motion for summary judgment (*see* docs. 99, 100). The court then instructed the parties on the ramifications of summary judgment and directed Plaintiff to file a response (doc. 102).[4] When Plaintiff failed to respond as instructed, the court issued an order to show cause on December 30, 2014, which informed Plaintiff that a recommendation of dismissal could result for his failure to comply with an order of the court and failure to prosecute (doc. 105). The response to the order to show cause was due January 20, 2015, but to date Plaintiff has not responded or otherwise communicated with the court.[5]

---

stated that, with respect to Plaintiff's work in the recycling program at FCIM from March 2005–February 2006, any cruel and unusual punishment or equal protection claims were time-barred and/or without merit (*see* doc. 90 at 5 & n.8; doc. 96). Further, the substance of Plaintiff's due process claim was properly analyzed under the Eighth Amendment, not the Due Process Clause (doc. 90 at 3 n.5; doc. 96).

[4] More specifically, the court's advisement order informed the parties of the importance and implications of summary judgment consideration and discussed the requirements for materials submitted for Rule 56 review (doc. 102). The order also advised Plaintiff that he must file and serve a separate, short and concise statement of the material facts as to which it is contended there exists a genuine issue to be tried, in the format set forth in Rule 56.1(A) of the Local Rules of the Northern District of Florida (*id.*). The court also informed Plaintiff that motion for summary judgment would be taken under advisement on December 19, 2014, and that his failure to comply with the order directing a response could result in a recommendation of dismissal for the failure to comply with an order of the court (*see id.*).

[5] The Bureau of Prisons ("BOP") inmate locator service indicates that Plaintiff currently is housed at Butner Federal Medical Center, in Butner, North Carolina (*see* http://www.bop.gov/inmateloc/ (last visited on February 10, 2015)), while the address Plaintiff has provided to the court is for the Butner Low Federal Correctional Institution, also in Butner, North Carolina. The two facilities apparently use different post office box addresses. *See* http://prisonhandbook.com/413/butner-low-federal-correctional-institution/ and http://prisonhandbook.com/412/butner-federal-medical-center/ (both sites last visited on February 10, 2015). The court's November 19, 2014, and December 30, 2014, orders were sent to the address for the Butner Low Federal Correctional Institution provided by Plaintiff, and they have not been returned as undeliverable. Accordingly, without further information to the contrary, the court must presume that its November and December 2014 orders were delivered to Plaintiff, even though he may now be housed at the Butner Federal Medical Facility.

Case No.: 5:10cv288/RH/EMT

**LEGAL STANDARDS**

Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F. 2d 1328, 1330 (11th Cir. 1988.) As the Supreme Court held in Celotex. Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785–86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." Beard v. Banks, 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See*, *e.g.*, Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).

Eighth Amendment

A prison official violates the Eighth Amendment when the official is deliberately indifferent to a risk of serious harm to an inmate. *See, e.g.*, Farmer v. Brennan, 511 U.S. 825, 837 (1994). To demonstrate deliberate indifference, an inmate must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."

Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) (alteration in original) (citation omitted); *see also* Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). In the context of inmate workplace safety, "prison officials are deliberately indifferent when they 'knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful.'" Smalls v Berrios, No. 3:06cv96/LAC/MD, 2007 WL 1827465, at *7 (citing Ray v. Mabry, 556 F. 2d 881, 882 (8th Cir. 1977); Morgan v. Morgensen, 465 F. 3d 8 1041,1045 (9th Cir. 2006); Jackson v. Caine, 864 F. 2d 1235, 1246 (5th Cir. 1989); and Franklin v. Kansas Dep't of Corrections, 160 F. App'x 730, 736 (10th Cir. 2005)). "Courts have recognized that the mere failure to provide proper instructions or safety devices for use on prison work details does not constitute deliberate indifference." Smalls, 2007 WL 1827465, at *7. Rather, such claims sound in negligence.

**DISCUSSION**

In light of Plaintiff's failure to file a response to Defendant Sanchez' motion for summary judgment and to respond to the court's order to show cause for such failure, dismissal of the claims against Defendant Sanchez without prejudice would be warranted. Nevertheless, based on the record before the court which establishes there is no genuine issue to be tried, it is appropriate to grant summary judgment in Defendant Sanchez' favor, with the claims against him being dismissed with prejudice.

Due to Plaintiff's failure to respond to file a statement of material facts controverting those asserted by Defendant Sanchez, Plaintiff is deemed to have admitted the following facts (doc. 100). *See* N.D. Fla. Loc. R. 56.1(A).

Defendant Sanchez worked at FCIM as the Associate Warden of Industries and Education from November 5, 2000, until April 29, 2006, where he supervised the UNICOR electronics recycling facility (ex. # 4 [affidavit of Defendant Sanchez], ¶¶ 3, 4).[6] Defendant Sanchez did not have day-to-day contact with the inmate employees, but he made it his practice to walk through the recycling factory frequently, at least once or twice each day, when he often spoke with the inmate

---

[6] All of the references to exhibits that follow are taken from Docket Entry # 100, Defendant Sanchez' Statement of Undisputed Material Facts in Support of Respondent's Motion For Summary Judgment.

Case No.: 5:10cv288/RH/EMT

employees (*id.*, ¶ 5). Defendant Short became the factory manager at the recycling facility in March of 2003 and continues to hold this position [as of November 12, 2014] (ex. #3 [affidavit of Defendant Short],[7] ¶¶ 1, 4). As the factory manager, Defendant Short oversaw the entire FPI recycling facility and was a supervisor of Plaintiff and a custodian of his work records (*id.*, ¶ 5; ex. #1 [Plaintiff's UNICOR work records]). Plaintiff worked in the UNICOR recycling facility from March 1, 2005, until March 17, 2006, as a dismantler and expediter (*id.*, ¶ 6).

The electronics recycling facility had two separate recycling operations that were divided by prisons, one in the men's prison and one in the women's prison; glass-breaking operations were conducted only in the women's prison in a special room designed for this purpose (ex. #4, ¶ 7; ex. #3, ¶ 7). Plaintiff never worked in the women's facility, (ex. #4, ¶ 7), and neither Plaintiff nor any male inmates were ever exposed to any toxic materials from the glass-breaking activity that took place in the women's facility (ex. #4, ¶ 9). No glass was intentionally broken in the men's facility where Plaintiff worked (ex. #4, ¶¶ 7, 9; ex. #3, ¶ 6). The cathode ray tubes that the male inmates removed were kept intact (ex. #3, ¶ 6). If any cathode ray tubes were broken accidentally during handling, they were quickly cleaned up with the use of a Hepa-Vac vacuum cleaner (*id.*). Accidental breakage was limited to fewer than ten (10) monitors per month (ex. #3, ¶ 12). Plaintiff received training in safety, including accidental glass breakage clean-up procedures (ex. #4, ¶ 11, ex. #1; pp. 5–10). Male inmates were required to wear safety goggles, safety shoes, and gloves; dust masks were available to inmates upon request (ex. #3, ¶ 10). Additionally, the FPI facilities were thoroughly ventilated to allow airflow (*id.*), and regular wipe tests of the male inmates' facility showed that the air quality was safe at all times Plaintiff worked in the electronics recycling facility (ex. #4, ¶ 13).

Prior to June 2008, no inmates, including Plaintiff, ever complained about exposure to "toxic dust" or air quality at the UNICOR facility at FCIM (ex. #4, ¶ 12; ex. # 3, ¶ 11). On July 16, 2008, the National Institute for Occupational Safety and Health ("NIOSH") published a report regarding the electronics recycling programs at the BOP prisons in Elkton, Ohio; Texarkana, Texas; and

---

[7] Although Defendant Short has not joined in Defendant Sanchez' motion for summary judgment, the motion contains an affidavit from Defendant Short (doc. 100, ex. 3).

Atwater, California (ex. #4, ¶ 14; ex. #3, ¶ 14). The report was the first instance in which any concern was raised about the possible danger of lead and cadmium poisoning at UNICOR recycling facilities (ex. #4, ¶ 14; ex. #3, ¶ 15). Prior to the publication of the NIOSH report, neither Defendant Sanchez nor Defendant Short had any knowledge of any risk of harm posed by exposure to metallic dust at the UNICOR glass-breaking facilities or electronics recycling facilities (ex. #4, ¶ 15; ex. #3, ¶ 15).

In light of the NIOSH report, the Justice Department conducted its own published review of all FPI facilities for electronics recycling, including FCIM. The Justice Department's review of FCIM determined that monitoring results obtained in August 2007 showed current routine e-waste recycling operations conducted in the recycling factory—the facility where Plaintiff worked and which did not include glass breaking operations—created minimal inhalation exposure potential to lead, cadmium, and other metals. Exposures were either very low or non-detectable (*see* ex. #2 [Evaluation of Environmental, Safety, and Health Information Related to UNICOR E-Waste Reycling Operations at FCI Marianna, dated April 28, 2010], section 5.1.1).

Defendant Sanchez and Defendant Short and their staff worked in the same environment and were equally exposed to any risk that Plaintiff and other inmates experienced during the period of Plaintiff's employment at the UNICOR electronics recycling factory at FCIM from 2005 to 2006 (ex. #4, ¶ 16; ex. #3, ¶ 19). At no time did Defendant Sanchez or Defendant Short require Plaintiff to perform activities they knew could have had an adverse effect on his health and safety nor did they know of anyone else ever having done so (ex. #4, ¶ 17; ex. #3, ¶ 17).

In light of the undisputed facts, recited above, it is clear that Defendant Sanchez did not know of any potential risk to Plaintiff or others—including Defendant Sanchez himself (ex. #4, ¶ 16) —from the recycling work performed at FCIM at the time Plaintiff worked there under Defendant Sanchez' supervision. Plaintiff cannot demonstrate that Defendant Sanchez was deliberately indifferent to him because, on this record, it is uncontroverted that Defendant Sanchez did not have subjective knowledge that there might be at risk of serious harm from toxic dust during the time Plaintiff worked in the recycling facility, which was between March 1, 2005, and March 17, 2006. Rather, Defendant Sanchez did not become aware of any possible risk until the NIOSH report was released in July 2008 (ex. #4, ¶ 15). By that time, Plaintiff had not worked in the

recycling facility for more than two years. Additionally, Defendant Sanchez avers that during the time period at issue he was never apprised of any complaints by inmates about toxic dust, including by Plaintiff (ex. #4, ¶ 12), and he never required Plaintiff to perform activities he knew at that time could have an adverse effect on Plaintiff's health and safety (ex. #4, ¶ 17).

In short, the undisputed evidence shows that Defendant Sanchez did not have knowledge of any risk of serious harm to Plaintiff caused by the exposure to toxic materials while Plaintiff was working in the recycling facility at FCIM between March 2005 and March 2006. As there simply is no evidence that Defendant Sanchez knowingly compelled Plaintiff to perform labor that constituted a danger to Plaintiff's life or health, Plaintiff is unable to satisfy the first prong of a claim of deliberate indifference against Defendant Sanchez. Summary judgment is therefore due to be granted in Defendant Sanchez' favor, with the claims against him being dismissed with prejudice.

Although Defendant Short has not yet responded to the second amended complaint, much less joined in the motion for summary judgment, it appears that granting summary judgment in his favor, *sua sponte*, is warranted. A district court has the authority under Rule 56(f) to grant summary judgment *sua sponte* after "identifying for the parties material facts that may not be genuinely in dispute," and providing the parties with "notice and a reasonable time to respond." *See* Fed. R. Civ. P. 56(f); Massey v. Cong. Life Ins. Co., 116 F.3d 1414, 1417 (11th Cir. 1997). The notice requirement "'is not an unimportant technicality, but a vital procedural safeguard'" that is subject to strict enforcement. *See* Ga. State Conference of NAACP v. Fayette Cnty. Bd. of Comm'rs, ____F.3d ____,____, Nos. 14–11202, 14–11204, 2015 WL 75269, at *6 (11th Cir. Jan. 7, 2015) (citing Massey, 116 F.3d at 1417). The notice provision ensures that a litigant will have the opportunity "'to formulate and prepare [its] best opposition to an impending assault upon the continued viability of [its]'" claim or defense. *Id.* (alterations in original).

The current record in this case reflects that, as with Defendant Sanchez, there is no genuine issue of fact regarding whether Defendant Short had subjective knowledge of any risk of serious harm to Plaintiff caused by the exposure to toxic materials while Plaintiff was working in the recycling facility at FCIM between March 2005 and March 2006. Like Defendant Sanchez, Defendant Short states that he did not become aware of any possible risk of harm until the NIOSH

report was released in July 2008 (ex. #3, ¶ 15), which was more than two years after Plaintiff had stopped working in the recycling facility. And, as is true with respect to Defendant Sanchez, Defendant Short states that during the relevant time period he worked in the same environment as did Plaintiff and was exposed to same risks (ex. #3, ¶ 19); he did not require Plaintiff to perform activities he knew could have had an adverse effect on Plaintiff's health and safety (*id.*, ¶ 17); and he was never informed of any complaints by inmates about toxic dust (*id.*, ¶ 11).

The evidence now before the court indicates that Defendant Short did not have knowledge of any risk of serious harm to Plaintiff caused by the exposure to toxic materials while Plaintiff was working in the recycling facility at FCIM between March 2005 and March 2006. Without such evidence, Plaintiff is unable to establish that Defendant Short knowingly compelled Plaintiff to perform labor that constituted a danger to Plaintiff's life or health, which is required to satisfy the first prong of a claim of deliberate indifference. Absent such a showing by Plaintiff, Defendant Short should be entitled to summary judgment in his favor, with the claims against him being dismissed with prejudice. The court shall give Plaintiff fourteen (14) days from the date of issuance of this Report and Recommendation in which to respond to the court's notice that it appears summary judgment should be entered against him and in favor of Defendant Short. If Plaintiff timely files a response in opposition to the *sua sponte* entry of summary judgment in Defendant Short's favor, this court shall consider it and enter a revised Report and Recommendation. If Plaintiff fails to timely respond, however, the court shall not revisit this case but rather shall let stand its recommendation of a *sua sponte* grant of summary judgment for Defendant Short.

As a final matter, as noted above, Plaintiff has not identified Defendant Joe Doe sufficiently and thus this Defendant has not been served with process. In light of the procedural posture of this case, including that it has been pending since 2010, the court recommends that the claims against this Defendant be dismissed, without prejudice. *See* Fed. R. Civ. P. 4(m); *see also* James v. Mazda Motor Corp., 222 F.3d 1323, 1324 (11th Cir. 2000). The more than four years that have elapsed since the initiation of this case should have provided ample time to identify all of the "John Doe" Defendants in this case, particularly in light of the court's efforts to assist the pro se, incarcerated Plaintiff in this regard (*see, e.g.*, doc. 90). Indeed, these efforts resulted in Plaintiff's ability to

identify, and serve, two of the three such Defendants.[8]  Moreover, the court notes that even if Plaintiff should later identify Defendant Joe Doe, his claims against him likely will be barred by the statute of limitations.  *See* Wayne v. Jarvis, 197 F.3d 1098, 1102–03 (11th Cir. 1999) (citing Barrow v. Wethersfield Police Dept., 66 F.3d 466, 468 (2d 1995) ("John Doe pleading cannot be used to circumvent statutes of limitation . . . .")).

**CONCLUSION**

For the reasons stated above, the court recommends that Defendant Sanchez' motion for summary judgment be granted.  Because there is no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, a final judgment should be entered in favor of Defendant Sanchez at this time dismissing all claims against him, with prejudice.  In addition, the court gives fourteen-days' notice to Plaintiff that it appears summary judgment in Defendant Short's favor is due to be granted and the claims against him dismissed with prejudice.  If Plaintiff timely responds to this notice, the court shall enter a revised Report and Recommendation addressing Plaintiff's opposition; if Plaintiff does not timely respond, the court shall not enter a new Report and Recommendation but rather shall stand on its recommendation of a *sua sponte* grant of summary judgment for Defendant Short.  As to the John Doe Defendant, Defendant Joe Doe, the court recommends his dismissal, without prejudice.

Accordingly it is **ORDERED**:

1. Defendant Short's "Second Motion for Extension of Time to Respond to Complaint" (doc. 107) is **GRANTED**, to the extent Defendant Short need not respond further in this case unless and until instructed otherwise by the court.

2. Plaintiff shall have **FOURTEEN (14) DAYS** from the date of this Report and Recommendation in which to file a detailed response outlining his opposition to the court's notice that summary judgment in Defendant Short's favor, entered *sua sponte*, appears to be warranted and the claims against him should be dismissed with prejudice.  If Plaintiff timely responds to this notice, the court shall enter a revised Report and Recommendation addressing Plaintiff's opposition;

---

[8] Even though the court's efforts failed with respect to the third such Defendant, Defendant Joe Doe, there is no indication that, without further identifying information from Plaintiff, any additional efforts would be successful (*see* doc. 92).

Case No.: 5:10cv288/RH/EMT

if Plaintiff does not timely respond, the court shall not enter a new Report and Recommendation but rather shall stand on its recommendation of a *sua sponte* grant of summary judgment for Defendant Short, based on the reasons stated above.

3.	If Plaintiff files a response to the court's notice, described *supra*, the clerk shall immediately refer it to the undersigned.  If no such response is filed, the clerk need not refer the case to the undersigned but rather shall refer this Report and Recommendation to the district court following the usual referral schedule.

4.	The clerk shall forward a copy of this Report and Recommendation to Plaintiff at his address of record at Butner Low Federal Correctional Institution and also to the Butner Federal Medical Center, both of which facilities are located in Butner, North Carolina.

And it is respectfully **RECOMMENDED**:

1.	That the motion for summary judgment filed by Defendant Sanchez (doc. 99) be **GRANTED**.  As there is no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, final judgment should be entered in favor of Defendant Sanchez at this time dismissing all claims against him, with prejudice.

2.	That, if Plaintiff fails to file a timely response to the court's notice, *supra*, summary judgment in Defendant Short's favor be granted, *sua sponte*, with final judgment being entered in Defendant Short's favor pursuant to Rule 54(d), dismissing all claims against him, with prejudice.

3.	That Defendant Joe Doe be dismissed without prejudice.

4.	That the clerk be directed to close this case.

At Pensacola, Florida, this 12th day of February 2015.

>	/s/ *Elizabeth M. Timothy*
>	**ELIZABETH M. TIMOTHY**
>	**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**